O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY JO KITTOK<br>　　　　Plaintiff,<br><br>v.<br><br>LESLIE'S POOLMART, INC., and DOES 1 through 100<br>　　　　Defendants. | CASE NO. EDCV 08-832 (OPx)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |

On July 6, 2009, the Court granted partial summary judgment in favor of plaintiff Mary Jo Kittok ("plaintiff" or "Kittok") on one of her disability access claims brought against defendant Leslie's Poolmart, Inc. ("defendant" or "Leslie's"), and dismissed her other claims. Plaintiff now brings the instant motion for attorneys' fees, as authorized by Cal. Civil Code § 54.3. The Court held a hearing on the motion on August 10, 2009.

For the reasons set forth below and consistent with the modification described, the motion is GRANTED.

## I. BACKGROUND

Plaintiff's complaint included claims brought under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 ("the ADA"), California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53 ("the Unruh Act"), the California Disabled Persons Act,

Cal. Civ. Code §§ 54-54.8 ("the DPA"), and for negligence under California common law, in response to an incident involving a non-accessible handicap parking space.

Kittok uses a wheelchair for mobility. In July, 2007, she visited a Leslie's Poolmart store in Riverside, owned and operated by defendant. The store has one handicap-designated parking space ("the space") in which Kittok parked her minivan. The only accessible means of reaching the store from the space was a ramp; however, after transferring out of her vehicle and into her wheelchair, Kittok found that, when her vehicle was parked in the space, it blocked access to the ramp. Since she could not access the ramp, Kittok transferred herself back into the minivan and moved the vehicle to another available parking space, which was not handicap-designated. She was then able to access the ramp leading from the parking area into the store, and successfully entered the store and completed her purchase. Kittok stated that on two subsequent occasions, however, she did not visit the Leslie's store in Riverside because of her experience with the parking situation there.

The parking space did not comply with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), found at 28 C.F.R. Part 36, App. A. The ADAAG make clear that there must be a designated, reserved, accessible space, and that there must be an accessible route from that space. See ADAAG 4.1.2; 4.6.4. The ramp from the space was necessarily blocked whenever a vehicle was parked in the space, thus failing to provide an "accessible route from the accessible parking to the building entrance," in violation of ADAAG 4.3.2(1). Moreover, the "access aisle" was only approximately 36 inches wide, not the 96 inches specified in ADAAG 4.1.2(5)(b), and the aisle was sloped and not level, in noncompliance with ADAAG 4.6.3.

After plaintiff filed suit in May, 2008, defendant redesigned the parking space and ramp to ensure compliance with federal and state accessibility requirements. Since the ADA only provides for injunctive relief, summary judgment was granted to

defendant on that claim because it was moot. The DPA and the Unruh Act both incorporate the ADA in that they make violations of the ADA violations under those statutes. See Cal. Civ. Code §§ 51, 54.1(d); Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007). Unlike the ADA, though, both the Unruh Act and the DPA authorize monetary damages. See Cal. Civ. Code §§ 52(a), 54.3(a). Under Cal. Civ. Code § 54.3(c), plaintiff cannot recover damages under both statutes; here, plaintiff elected to proceed under the DPA and moved for summary judgment on that claim alone. In doing so, she sought the statutory minimum penalty of $1,000, and argued that no issue of disputed fact existed as to whether she was entitled to recover under the DPA. Defendant concurrently moved for summary judgment on all of plaintiff's state claims on the basis that the Court should decline to retain supplemental jurisdiction. The Court rejected that argument.

In opposition to plaintiff's motion, defendant argued that, even if the parking space was not in compliance, plaintiff was not entitled to recover since (1) there were other, non-handicap-designated spaces available on the day Kittok visited the store and (2) when she drove a different van, she had been able to use the handicap space. The Court rejected these arguments as insufficient to defeat Kittok's claim as a matter of law. Since it was undisputed that (1) the space was noncompliant, (2) the plaintiff experienced difficulty accessing the store due to that noncompliance, and (3) the plaintiff was deterred from visiting the store on other occasions due to these difficulties in accessing the store, the Court held that Kittok had established a violation of the ADA, and thus the California statutes, and granted plaintiff the statutory minimum penalty under the DPA.[1]

Plaintiff moves for attorneys' fees in the amount of $40,169.60, pursuant to California Civil Code § 54.3.

---

[1] Defendant has appealed the Court's July 6 rulings on the bases that the Court's exercise of supplemental jurisdiction was in error and that genuine issues of disputed material fact existed as to whether plaintiff was denied access and entitled to relief on her DPA claim. See Dkt. No. 35.

## II.  ANALYSIS

Where a plaintiff moves for attorneys' fees on the basis of success on a state law claim, a federal court is to follow state law regarding both a party's right to fees and in the method of calculating the fees.  See MRO Communications, Inc. v. American Tel. & Tel. Co., 197 F.3d 1276, 1281-83 (9th Cir.1999); Mangold v. California Pub. Utils. Comm., 67 F.3d 1470, 1478-79 (9th Cir.1995).

California Civil Code § 54.3(a) provides that "any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2" is liable for either damages or the $1,000 statutory penalty, "and attorney's fees as may be determined by the court in addition thereto."  The statute does not provide a specific mechanism for determining fees.  However, "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."  PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000).  "The reasonable hourly rate is that prevailing in the community for similar work."  Id.  While the prevailing party may seek an upward adjustment of the lodestar figure in certain circumstances, plaintiff only seeks to recover the lodestar amount here.

Defendant objects to the award of fees on several grounds.  Unrelated to any specific objection, defendant begins its opposition with an indignant screed against litigation brought under the ADA and other disability access laws, both in general and particularly focusing on litigation brought by plaintiff and her counsel.  Defendant describes ADA lawsuits as "'shakedown schemes' for attorney's fees," and opines that "California, in particular, has been a magnet for unscrupulous plaintiffs and counsel due to the availability of hefty monetary damages under state law."  Opp'n at 1.  Additionally, defendant states that "plaintiff and her counsel have followed the typical ADA scheme pattern to a tee," pointing out previous cases filed

by plaintiff. Id.

Not only are these attacks on the scruples and ethics of plaintiff and her counsel inappropriate in tone, they are wholly unsupported in substance. The Court acknowledges, both in its experience and as noted elsewhere, that there have been instances of abusive and frivolous litigation brought under the ADA and state disability access laws. See Carri Becker, Note, Private Enforcement of the Americans with Disabilities Act via Serial Litigation: Abusive or Commendable?, 17 Hastings Women's L.J. 93, 97-99 (2006) (discussing 'abusive' litigation in California). However, absent a showing that *this* case was frivolous, abusive, or somehow brought in bad faith, this Court will not disregard the plain statutory text conferring attorneys' fees upon a prevailing DPA plaintiff if she is otherwise entitled to them. Compare Molski v. Mandarin Touch Restaurant, 347 F. Supp.2d 860 (C.D. Cal. 2004) (finding plaintiff's multiple suits were filed in bad faith), aff'd in part sub. nom Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007).

The Court has already determined that this case was not frivolous, as it awarded judgment in plaintiff's favor. See Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984), quoted in In re Thomas, 508 F.3d 1225, 1227 (9th Cir. 2007) (a frivolous complaint is one that recites "bare legal conclusions with no suggestion of supporting facts, or postulating events and circumstances of a wholly fanciful kind" or facts that conflict "with facts of which the district court may take judicial notice").

Defendant's attempts to argue that this case was abusive or brought in bad faith also fail. These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA and California statutes. See, e.g., Wilson v. Pier 1 Imports (US), Inc., 411 F. Supp.2d 1196 (E.D. Cal. 2006); Doran v. Vicorp Restaurants, Inc., 407 F. Supp.2d 1115 (C.D. Cal. 2005); Mandarin Touch Restaurant, 347 F. Supp.2d at 863-64. In many of those cases, a defendant has raised the argument when the case has

terminated in *its* favor, and it seeks to recover its own fees. See, e.g., Wilson v. Tony M. Sanchez & Co., Inc., No. Civ. S-07-022 JAM GGH, 2009 WL 1079984 (E.D. Cal. Apr. 21, 2009) (denying defendant's fee request and rejecting argument that claim was frivolous); Harris v. Stonecrest Care Auto. Center, LLC, 559 F. Supp.2d 1088 (S.D. Cal. 2008) (same); Molski v. Arciero Wine Group, 164 Cal. App. 4th 786 (2008) (upholding awarding of fees to prevailing defendant on disability access claims); Lopez v. Del Taco Restaurant Properties, II, 247 Fed. App'x 860, 2007 WL 1852113 (9th Cir. June 27, 2007) (reversing award of fees to defendants and rejecting argument of frivolousness). Here, the argument is even less persuasive than in those cases, because judgment has been issued in favor of plaintiff, and the statute clearly authorizes an award of fees in such a scenario. If a plaintiff establishes a violation of law which entitles her to damages and fees, the Court will not question her scruples in filing the case in the absence of any real evidence which would call those scruples into question.[2]

Inasmuch as defendant seems to suggest that plaintiff's meritorious claim is annoying, difficult for business, or otherwise objectionable, that is an argument for the legislature, not the courts. See Angelucci v. Century Supper Club, 41 Cal. 4th 160, 179 (2007) ("It is for the Legislature (or the People through the initiative process) to determine whether to alter the statutory elements of proof to afford business establishments protection against abusive private legal actions and settlement tactics."); Evergreen Dynasty Corp., 521 F.3d 1215, 1219 (9th Cir. 2008)

---

[2] The fact that plaintiff and her counsel have filed multiple similar suits is of little import here if *this* case was meritorious. See Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) (disapproving of district court's denial of fees in part based on "Plaintiff's counsel's numerous other lawsuits in the Central District of California [as] those cases are not a part of the record here."); D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008) ("The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny."); Wilson v. Pier 1 Imports (US), Inc., 411 F. Supp.2d 1196, 1199 (E.D. Cal. 2006) (finding record of litigiousness did not establish bad faith on part of plaintiffs).

(Berzon, J., dissenting from denial of rehearing en banc) (noting that if "abusive" litigation is permitted under the Unruh Act, "the appropriate fix is legislative, not judicial"). The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs anymore than it shows a hesitation of businesses to comply with the law. As the Ninth Circuit has noted in the context of ADA litigation, "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007) (panel op.), citing Samuel R. Bagenstos, The Perversity of Limited Civil Rights Remedies: The Case of 'Abusive' ADA Litigation, 54 U.C.L.A. L. Rev. 1, 5 (2006).

In addition to its general tirade against disabled plaintiffs, defendant makes the inflammatory, baseless, and unprofessional suggestion that, "As is typical in ADA shakedown schemes, Plaintiff and her counsel have unnecessarily incurred attorneys' fees throughout this litigation." Opp'n at 3. In this case, however, a careful examination of the record reveals that defendant's counsel – not plaintiff's – has acted unprofessionally and generated needless expenses for both parties in the case.

The fact that the fees sought exceed the judgment does not establish a "shakedown," particularly in light of the numerous good faith offers to settle at earlier points in this litigation. Plaintiff seeks only to recover the lodestar amount. Plaintiff offered to settle this entire case for far lower amounts multiple times, including an offer of $9,000, including fees, in November, 2008. Chileen Decl. Ex. 5. These facts are inconsistent with an allegation that the whole action was nothing but an effort to run up attorneys' fees costs. Additionally, while there was an issue relating to plaintiff's deposition which resulted in sanctions against plaintiff, as explained below, the circumstances surrounding that motion further bolster the conclusion that

plaintiff's counsel has behaved reasonably and that it is defendant's counsel that has needlessly and inexplicably caused both parties' costs to increase.  Finally, it is defendant who has filed an appeal of the $1,000 judgment against it.  While defendant is certainly entitled to appeal a judgment against it, given the circumstances here it casts a quantum of doubt on defendant's assertion that it is *plaintiff* who has unnecessarily caused this litigation to continue.

Yes, plaintiff's counsel stand to benefit financially from this lawsuit, as do defendant's counsel, who presumably are not representing defendant on a contingency basis.  But this does not, in and of itself, call into question the legitimacy of their fee request.   "The fee-shifting statutes reflect a judgment that civil rights laws will be underenforced unless private lawyers are given financial incentives to bring cases under those laws."  Bagenstos, supra, 54 U.C.L.A. L. Rev. at 30.  Defense counsel cannot assert these very incentives as a reason to deny the statutorily conferred right they were designed to bring.  "That plaintiffs' lawyers want to be paid the 'reasonable' attorneys' fees authorized by statute should provide no basis for objecting to their litigation practices."  Id.

## Plaintiff as Prevailing Party

In addition to its allegations regarding plaintiff's motives in filing this case, defendant argues that plaintiff is not the prevailing party in this case, and thus not entitled to recover any attorney's fees.  Defendant characterizes the results of this suit as "accomplish[ing] little beyond giving a plaintiff the moral satisfaction of knowing that a federal court concluded that his rights had been violated."  Opp'n at 5.  This is an inaccurate description of the case here, and shows a callous disregard of the well-established principles behind disability access laws.

It is important to note that the source of plaintiff's fee request is the DPA.  Plaintiff clearly prevailed on her DPA claim; the Court issued a judgment in her favor on that claim, and granted her the statutory penalty requested.  Because the Court found that Leslie's "denie[d] or interfere[d] with admittance to or enjoyment" of a

public accommodation, the statute confers a right to fees. The attorney fee provision of the DPA is reflective of the California "legislature's awareness of the continuous problems of enforcement" of disability access laws. Donald v. Café Royale, Inc., 218 Cal. App.3d 168, 179 (1990). In explicitly providing for the recovery of attorney's fees, even though the DPA does not require a showing of damages, the California legislature explicitly determined that there is a societal value to the vindication of the rights at issue here.

Despite defendant's contrary suggestion, there is no general requirement that a plaintiff prevail on *all* of her claims to recover attorneys' fees, nor that "attorney fees bear a percentage relationship to the ultimate recovery of damages in a civil rights case." Harman v. City and County of San Francisco, 158 Cal. App.4th 407, 419 (2007), citing Riverside v. Rivera, 477 U.S. 561, 574 (1986). Defendant cites Hensley v. Eckerhart, 461 U.S. 424 (1983), for the proposition that attorneys' fees should be reduced where a plaintiff has only "limited" success, Opp'n at 6-7. But defendant's reliance on Hensley is misplaced for several reasons. First, "California does not follow the approach to fee awards adopted by the federal courts." Weeks v. Baker & McKenzie, 63 Cal. App.4th 1128, 1173 (1998); see also Beaty v. BET Holdings, Inc., 222 F.3d 607, 611 n.1 (9th Cir. 2000). As one California court explained in analyzing the applicability of Hensley to a motion for fees brought under a different California statute, "[t]he issue of the proper amount of fees to be awarded when an attorney's time is attributable to recoverable and nonrecoverable claims depends on the legislative intent and policies underlying the specific fee-shifting scheme at issue." Mann v. Quality Old Time Service, Inc., 139 Cal. App.4th 328, 341 (2006). As such, the Court cannot apply case law interpreting the legislative intent of federal civil rights laws to the instant case, which concerns different statutes passed by a different legislature.

But even if the Court were to apply Hensley, it would not bar the recovery of fees in this case. The Ninth Circuit has recently explained that Hensley requires a

"focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009). Plaintiff's success here was not limited at all: She achieved all she sought, both in terms of statutory damages and the modification of the parking lot. The fact that the damages (sought and awarded) are low in this case does not show "limited" success, in large part because plaintiff did not seek larger damages.

It is overly simplistic to suggest that Leslie's "prevailed" on the other three claims, or even that plaintiff did not prevail. From the complaint onward, plaintiff had noted that she would be required to elect between the remedies offered under the DPA and those offered by the Unruh Act, should the Court find her to be entitled to relief under both. Thus, the fact that she ultimately did make such an election does not suggest that she was not the prevailing party. The ADA claim was dismissed as moot only because Leslie's, after the litigation was initiated, voluntarily modified its facility to come into compliance with the law. A dismissal for mootness does not make the defendant the prevailing party. Molski v. Arciero Wine Group, 164 Cal. App.4th 786, 790 (2008). In such circumstances, a plaintiff may still be the prevailing party on the dismissed claim "if the lawsuit was the catalyst motivating the defendant to modify its behavior or the plaintiff achieved the primary relief sought." Id.; Barrios v. California Intersch. Fed., 277 F.3d 1128, 1137 (9th Cir. 2002). Based on the record before it, the Court finds that such was certainly the case here.

Moreover, the Ninth Circuit in McCown reaffirmed that, in determining a reasonable fee award, a district court is to "consider not only the monetary results but also the significant nonmonetary results the plaintiff achieved for himself and other members of society." Id. at 1105. The California legislature has determined that the rights of the disabled to be fully integrated into the community is of great value to society. Although many may see the technical violations of the ADAAGs here as trivial, they are of "surpassing importance to individuals with disabilities."

Bagenstos, supra, 54 U.C.L.A. L. Rev. at 24. "Technical as they are, the ADA Accessibility Guidelines are simply designed to remove the manmade barriers that exclude people with disabilities from participating in major parts of our nation's economic and community life." Id. The fact that the modification of the parking lot occurred not as a result of judicial decree does not deprive it of all significance.

One California court, in rejecting the argument that Hensley applied to California state law claims, explained: "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." Sundance v. Municipal Court, 192 Cal. App.3d 268, 273 (1987). The Court found that defendant violated the ADA, and thus the DPA and Unruh Act. Even though no injunctive relief was appropriate because defendant has voluntarily brought its facility into compliance prior to the Court's ruling, plaintiff is still entitled to the $1,000 statutory penalty provided by the DPA. In light of the total outcome and the fact that plaintiff vindicated a public right, plaintiff is rightfully considered the prevailing party and entitled to reasonable attorney's fees expended in this action.

### The Fees Incurred

The Court now turns to Defendant's specific arguments that some of the fees charged are unreimburseable.

First, defendant objects to the inclusion of fees related to the motion to compel plaintiff's deposition. The motion concerned plaintiff's failure to appear at a properly noticed deposition, which both plaintiff's counsel and defendant's counsel attended. Plaintiff responds that she made an honest scheduling mistake when she failed to show up for her deposition. See Pl.'s Ex. 3. Moreover, through her counsel, she promptly apologized, offered to reschedule the deposition, and offered to pay the court reporter's costs and $200 to defense counsel for his wasted time. Id. Defendant unexplicably resisted this overture, and brought a motion to compel and for sanctions in the amount of $2,335.00. Magistrate Judge Parada awarded

only $269.50 in court reporter costs and $175 in attorney's fees - *less* than what plaintiff had voluntarily offered to pay. When asked by this Court to explain why the motion was necessary despite plaintiff's good faith, generous offer, defense counsel could not provide any reason. Because this motion was unnecessary, wasteful, and hostile, and defendant can provide no explanation as to why it was brought, the Court refuses to deny defendant reimbursement for its cost in addressing it.[3]

Next, defendant objects to fees incurred meeting and conferring with defendant's counsel regarding plaintiff's deposition testimony. Defendant states that plaintiff's counsel eventually "conceded" that plaintiff's deposition testimony was "inadequate" and agreed to pay voluntary sanctions. However, defendant offers no evidence of such a concession other than unsupported statements in defendant's counsel's declaration. See Chilleen Decl. ¶ 5. Plaintiff's counsel insists no such concession was ever made. Handy Reply Decl. ¶¶ 2-3. Without any more specifics, and absent any showing of bad faith, fees for participating in a meet and confer regarding the potential need for more testimony is not of the nature of an improper or unreasonable fee.

Third, defendant objects to the attempt to recover $3,333.50 for plaintiff's counsel's preparation of plaintiff's motion for summary judgment, on the basis that the motion was "identical" to a motion filed before District Judge Christina A. Snyder in another case. Upon reviewing the motion filed before Judge Snyder and the motion filed in this case, the Court observes that the motions are certainly similar and all of the legal research is duplicated. However, the factual analysis is different. The Court finds a reduction of 1/3 of the fees is warranted, as it is unreasonable that over eleven hours were spent on the largely duplicative motion.

Fourth, defendant challenges $4,277.50 of fees relating to the preparation of plaintiff's opposition to defendant's motion for summary judgment on the bases that

---

[3] This incident demonstrates particular gumption on behalf of defendant in making its argument, discussed above, that *plaintiff's* counsel is acting unreasonably and merely trying to run up fees in this case.

Leslie's "won" that motion and plaintiff had already agreed that the ADA claim was moot. Defendant did not "win" that motion, though, as the motion was only partially granted. The motion sought summary judgment as to both the ADA claims and the state law claims, and was predominantly focused on arguing that the Court should decline to exercise supplemental jurisdiction over the state law claims. Plaintiff's opposition conceded the mootness of the ADA claims and, like defendant, primarily focused on the supplemental jurisdiction issue. The opposition was thus appropriate and reasonable, and because plaintiff prevailed on the issue of jurisdiction over the state law claims, which was the only issue the opposition presented an argument on, she is entitled to recover her attorneys' fees.

Defendant also objects to $1,858.50 in fees incurred in generating "boilerplate documents such as the Compliant [sic], Plaintiff's discovery requests, and the initial demand correspondence." Opp'n at 10. Because there is no evidence that plaintiff or her counsel ever sued relating to the parking lot at Leslie's before, it is unclear how any of these fact-intensive documents are "boilerplate," even if they built off of materials that had also been used in prior litigation. The Court finds the small total amount of time spent on these materials, 6.3 hours, reasonable and appropriate.

Defendant makes a general challenge that plaintiff's counsel has failed to "identify specifically what time was spent working on the issues as to which he [sic] prevailed and not others." Opp'n at 10. "Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th 672, 686-87 (2000). Here, the facts and legal issues raised by the state and federal law claims were extremely intertwined. Although plaintiff did not "prevail" on her ADA claim, all time spent on that claim is equally attributable to the state law claim on which she did prevail, since plaintiff prevailed on her DPA claim by first showing that there was a violation of the ADA.

The only issue that could solely apply to the ADA is the mootness of injunctive relief, but plaintiff conceded this issue in her briefs, so no real time can be apportioned to this issue.

Defendant argues that several of plaintiff's time entries are examples of inappropriate block or serial billing, and identifies twelve entries it considers unreimbursable, as they each include multiple activities and account for more than three hours. (Reprinted at Chilleen Decl., Ex. 8).

"'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 944 n. 2 (9th Cir. 2007), quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n. 15 (10th Cir. 1996). Block billing does not per se bar reimbursement for attorneys' fees. See Christian Research Institute v. Alnor, 165 Cal. App. 4th 1315, 1325 (2008); Nightingale v. Hyundai Motor America, 31 Cal. App. 4th 99, 102-03 (1994). "[V]erified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." Horsford v. Bd. of Trustees of Cal. State Univ., 132 Cal. App. 4th 359, 396 (2005).

It is debatable whether the challenged entries truly qualify as block billing. While they all include several tasks, they are extremely specific and include discrete tasks, and do not raise any concerns about how the time was spent. For example, one challenged item is "Preparation for and meeting with Mr. Chang in our office to hold the pretrial meeting of counsel; discussed case; discussed settlement; he gave me a copy of Ms. Kittok's deposition." Chilleen Decl., Ex. 8 at 68. Plaintiff's counsel certainly could have broken down this 3.3 hour block into meeting preparation time and the meeting time itself, but was under no obligation to do so. The entry would only be a problem where it "obscure[s] the nature of some of the work claimed." Christian Research Institute, 165 Cal. App.4th at 1325. Here, the

challenged items are more than sufficient to meet plaintiff's burden of showing reasonable time spent on the activities listed.

Defendant objects to the declaration submitted by plaintiff of Boyd Lemon, Pl.'s Ex. 11, opining as to the reasonableness of plaintiff's attorneys' hourly rates. The declaration was prepared in 2004 for a different case (Rodriguez v. Home Depot). The Court agrees that the declaration should be excluded, as it is irrelevant to the issue of reasonable fees in 2008 and 2009 in this case. Notably, though, defendant does not argue that there is anything unreasonable about the fees requested ($295 per hour), and the Court finds such fees to be reasonable given the prevailing rates charged in the community. As such, the objection is moot.

### III. CONCLUSION

The California legislature has determined that the rights of the disabled to fully access places of public accommodation are sufficiently important to justify the award of attorney's fees to encourage plaintiffs, and their counsel, to bring meritorious cases to vindicate those rights. "It is plain to see the Legislature's purpose in imposing increased penalties and additional enforcement methods is to guarantee compliance with equal access requirements." Donald, 218 Cal.App.3d at 179. For defendant's argument against the award of fees in this case to be accepted, defendant's "righteous indignation must be bottomed on their own blameless conduct, and that they are the subject to a frivolous lawsuit because they, in fact, have not violated the ADA [or the DPA]." Wilson v. Pier 1 Imports (US), Inc., 411 F. Supp.2d 1196, 1199 (E.D. Cal. 2006). A review of the facts shows this is not the case.

Having reviewed the motion, supporting documents, and opposition, the Court GRANTS plaintiff's motion for attorney's fees in this case. The Court reduces the $40,169.90 requested by by $1,111.17 for the fees related to plaintiff's motion for summary judgment. The Court thus awards $39,057.83 as a reasonable fee.

DATE: September 4, 2009

*[signature: S.G. Larson]*

STEPHEN G. LARSON

UNITED STATES DISTRICT JUDGE